UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
POORAN LALL,                                        :
                                                    :
                              Plaintiff,            :         **DECISION & ORDER**
                                                    :         17-CV-3609 (WFK) (LB)
            v.                                      :
                                                    :
CITY OF NEW YORK, NEW YORK CITY                     :
BOARD OF EDUCATION, MOSES OJEDA,                    :
and LOTUS TRIOLA,                                   :
                                                    :
                              Defendants.           :
-------------------------------------------------------------x

**WILLAM F. KUNTZ, II, United States District Judge:**  Pooran Lall ("Plaintiff") brings this action against the City of New York, the New York City Board of Education, Moses Ojeda, and Lotus Triola (collectively, "Defendants"), alleging violations of 42 U.S.C. §§ 1981 and 1983, Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("SHRL"), and the New York City Human Rights Law ("CHRL").   Defendants moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  *See* Defs.' Mem. in Supp. of Mot. for Summary Judgment ("Defs.' Mem."), ECF No. 45.   Plaintiff opposed Defendant's motion.  *See* Pl.'s Opp. to Mot. for Summary Judgment ("Pl.'s Mem."), ECF No. 50. On December 11, 2019, the Court granted Defendants' motion for summary judgment as to Plaintiff's § 1981 claims, New York State and City Human Rights Law claims, and all claims against the City of New York.  ECF No. 52.  The Court denied summary judgment as to all other claims.  The Court writes now to provide the reasoning for its decision.

## BACKGROUND AND PROCEDURAL HISTORY

The following facts are drawn from the parties' Local Rule 56.1 Statements,

declarations, deposition testimony, and other evidence submitted in support of the motion.  Fed.

R. Civ. P. 56(c).  *See generally* Defs.' Local Civil R. 56.1 St. of Undisputed Facts (Defs.' St.),

ECF No. 45-2; Pl.'s Response to Defs.' Undisputed Facts (Pl.'s Rsp.), ECF No. 50-1.  The facts

are undisputed or construed in the light most favorable to the Plaintiff, the non-moving party,

"with all factual ambiguities resolved and all reasonable inferences drawn in his favor."

*Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2005).[1]

## I.       Facts

### a.    Plaintiff's Employment with Defendants

Pooran Lall ("Plaintiff"), who identifies as East Indian and of Guyanese descent, has

served as a science teacher at Thomas Edison Career and Technical High School ("Thomas

Edison"), a majority-minority school, in Jamaica, New York from 2003 until present.  Pl.'s Rsp.

¶¶ 1–3.  Gabriella "Lotus" Triola ("Defendant Triola"), who identifies as Caucasian and of

Romanian descent, has served as an Assistant Principal ("AP") at Thomas Edison since the

2011–2012 school year.  *Id*. ¶ 5.  Moses Ojeda ("Defendant Ojeda"), who identifies as Hispanic

has served as the Principal of Thomas Edison since before the 2012–2013 school year.  *Id*. ¶ 6.

Defendants Triola and Ojeda supervised Plaintiff at Thomas Edison.  *Id*.  The New York City

Department of Education ("DOE")[2] operates public schools and as such, Plaintiff and

Defendants Triola and Ojeda are employees of the DOE.  *See* Amended Complaint (Compl.) ¶

4–8, ECF No. 18.  Plaintiff alleges the DOE is an agency of the City of New York, a

municipality of the State of New York.  *See id*.

Before Defendants Ojeda and Triola's supervision of Plaintiff, which began in the 2011–

2012 school year, Plaintiff had occasional reprimands from previous Thomas Edison

administrators.  *Id*. ¶¶ 7–13.  For example, in November 2005, a former Thomas Edison

---

[1] Citations to a party's Rule 56.1 statement and memorandum incorporate by reference the documents cited therein.  The Court takes to be true facts stated in a party's Rule 56.1 statement supported by testimonial or documentary evidence and denied by the other party with only a conclusory statement without citation to conflicting testimonial or documentary evidence.  E.D.N.Y. Local Rules 56.1(c)–(d).
[2] Plaintiff identifies the New York City *Board* of Education in the caption.  The Court recognizes the New York City Board of Education to be interchangeable with the New York City *Department* of Education, as the parties identify the entity in their briefs and corresponding papers.  *See Hui-Wen Chang v N.Y.C.*, 16-CV-2373, 2016 WL 5874992, at *2 (E.D.N.Y. Oct. 7, 2016) (Matsumoto, J.) ("[T]he Board of Education of the City of New York has been renamed the New York Department of Education.").

Principal issued Plaintiff a letter advising him that students were not permitted to leave checkout

before the bell.  *Id.* ¶¶ 7–8.  Additionally, in March 2006, December 2009, and April 2010,

Plaintiff was reprimanded for infractions, all of which he disputed.  *Id.* ¶¶ 7–13.

     b.  <u>Defendants' Classroom Observations of Plaintiff</u>

     Between 2011 and 2017, Defendants conducted a number of both informal and formal

observations of Plaintiff's lessons.  Defendant Triola performed the majority of the observations

and subsequently prepared written evaluations.  After each observation, Plaintiff was assessed

across various areas such as "managing student behavior" and "managing classroom

procedures."  *See, e.g.*, Defendants' Exhibit (Defs.' Ex.) T, ECF No. 46-2.  These evaluations

often included both commendations and recommendations for improvement.  *See, e.g.*, Defs.'

Ex. Q, ECF No. 46-2.  On at least two occasions, Defendants met with Plaintiff and a union

representation to discuss these observations.  Pl.'s Rsp. ¶¶ 35–36.  Additionally, Defendants

issued Plaintiff two disciplinary letters.  *Id.*  The first addressed Plaintiff's alleged failure to

follow instructions on issuing student textbooks, and the second addressed his alleged failure to

have an appropriate lesson plan during an observation in September 2014.  *Id.*

     Plaintiff alleges his negative evaluations are inconsistent with his students' test

performances and are a result of Defendants' discriminatory animus against him.  At the end of

every school year, teachers receive an Annual Profession Performance Review ("APPR") rating

based on (1) "observations of the teacher" and (2) reflections of "student learning and test

scores."  Pl.'s Rsp. ¶ 33 n.2.  Plaintiff's APPR history is as follows: 2011–2012 Satisfactory;

2012–2013 Satisfactory; 2013–2014 Effective; 2014–2015 Developing; 2015–2016 Developing;

2016–2017 Effective.  Defs.' Ex. N, ECF No. 46-2.  Plaintiff's Developing ratings resulted in his

placement on "Training Improvement Plans" ("TIPs") in the 2015–2016 and 2016–2017 school

years.  Pl.'s Rsp. ¶¶ 41, 57.  As contrasting evidence, Plaintiff maintains the passage rate for the

Earth Science Regents exams for students taught by Plaintiff was as follows: 2014 – 94%; 2015

– 99%; and 2016 – 99%.  Pl.'s Rsp. ¶ 113; *see also* Defs.' Ex. KK, ECF No. 46-2.  Furthermore,

he asserts that in 2016 and 2018, students from his classes won the graduation awards for Earth

Science and Living Environment, respectively.  *Id.*

      Beyond those facts, the parties agree on little else.  The parties dispute the fundamental

factual bases of Plaintiff's classroom performance, in addition to the interpersonal exchanges of

all in-person interaction between them.  *Id.*

      c.  <u>Additional Claims of Discrimination</u>

      In addition to negative evaluations, Plaintiff alleges several other discriminatory

incidents.  He was demoted to a teacher's helper role during the 2015–2016 school year.  *See*

Pl.'s Mem. of Law in Opposition to Motion for Summary Judgment (Pl.'s Mem.) at 13.  Also in

2015–2016, Plaintiff alleges he was denied permission to grade Regents Exams which were

instead graded by Caucasian teachers who lacked specialization in science.  *Id.*  He claims he

was denied access to a Google Drive folder which prohibited him from submitting team

intellectual contributions—and then was reprimanded for his failure to do so.  *Id.*  He alleges

Defendants failed to alert and to encourage him to engage in advanced or remedial training

opportunities.  *Id.*  While Caucasian teachers were brought in to discuss their options, Plaintiff

was reprimanded for not taking advantage of those training opportunities.  *Id.*  Furthermore,

Defendant Triola has consistently humiliated and degraded him in the presence of other teachers.

*Id.*

      Plaintiff asserts this derogatory treatment is part of a larger pattern and practice of racial

discrimination implemented by Defendants.  Plaintiff created a document purporting to show that

in 2013 seventy-six percent (76%) of teachers at Thomas Edison were Caucasian and twenty-four percent (24%) were teachers of color.  *See id.* at 8–9, Pl.'s Ex. P.  In 2016, the number of teachers of color allegedly decreased to seventeen percent (17%) while the number of Caucasian teachers increased to eighty-three percent (83%).  *Id.*  In 2018, the number of teachers of color dropped to eleven percent (11%)—less than half of the amount of 2013—while the number of Caucasian teachers increased to eighty-nine percent (89%).  *Id.*

As a direct example of this pattern, Plaintiff points to Mr. Mohabir, also a Guyanese teacher, who was removed from his position because there were "[n]ot enough [physics classes] to warrant a full-time physics teacher."  *See* Pl.'s St. ¶ 76.  Plaintiff alleges that, in fact, Mr. Mohabir was relegated to teaching Cricket, even though he had the highest student passage rate in Physics.  *See* Pl.'s Mem. at 13.  Then he was immediately replaced with a new uncertified Caucasian teacher, while several Physics classes continued to be offered.  *Id.*  Plaintiff also claims, based on conversations with other teachers, that teachers of color consistently receive lower ratings than Caucasian teachers.  *See id.* at 13–14.

### d. United Federation of Teachers Complaint

On July 6, 2016, Plaintiff summarized his complaints in an email to United Federation of Teachers ("UFT") representative Sterling Roberson, claiming he was "experiencing serious and blatant harassment" and detailing the alleged harassment.  Pl.'s St. ¶ 52.  Plaintiff claimed, in addition to the unfairly negative evaluations and the previously mentioned incidents, Defendants penalized him for events that never occurred, created evaluations based on written plans instead of observations of actual lessons—in violation of union agreements, refused to assist Plaintiff with extremely disruptive students who threatened to harm him, denied textbooks to his students, failed to provide basic equipment such as a working computer and smartboard, penalized

Plaintiff for calling the dean to help with students whose behavior was placing other students in danger, instructed Plaintiff to observe teachers who were only in their first year and were extremely inexperienced, had students deliver disciplinary letters in violation of procedure, and posted demeaning statements about job performance on parent outreach websites.  *Id.* ¶ 53.

Plaintiff wrote a second letter to the UFT Administration, dated July 10, 2016, similar in content to the above, entitled "Racial Discrimination at Thomas Edison High School" stating he "realize[s] [that] this might be a case of harassment with racial motive." *Id* ¶ 55.  Plaintiff also detailed in this letter the small percentage of teachers of color at Thomas Edison.  *Id.*

e.  <u>Plaintiff's Complaint with the Equal Employment Opportunity Commission</u>

On January 19, 2017, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging Defendants Ojeda, Triola, and the DOE discriminated against him on the basis of "race," "color," and "national origin."  Pl.'s Rsp. ¶ 109.  In the Affidavit attached to the EEOC complaint, Plaintiff detailed the alleged discriminatory acts taken against him and systemic discrimination.  *Id.*  On March 23, 2017, the EEOC issued Plaintiff a Dismissal and Notice of Rights.  *Id.* ¶ 110.

f.  <u>Defendants' Alleged Retaliation</u>

Although Defendants claim they only recently became aware of the EEOC complaint, Plaintiff alleges he suffered retaliation and a hostile work environment as a result of his filing. *See* Pl.'s Mem. at 17–18.  Plaintiff asserts the retaliation consisted of the following actions taken by Defendants: his courses were reduced from four to three and his rooms reduced from four to three; Defendant Triola reprimanded Plaintiff when two of his students were lost due to misinformation from Defendant Triola; Defendants did not fix Plaintiff's smart board technical issue for three weeks; and Defendant Triola submitted a false statement that Plaintiff engages in

no professional development activities.  *Id.*  Plaintiff further claims that after he filed the EEOC

complaint, when Defendants continued to give him negative evaluations, they would initially

mislead Plaintiff and tell him that the observation had gone well.  Pl.'s Rsp. ¶ 106.  As with all

the allegations detailed above, Defendants deny the truth of these claims.

## II.       Procedural History

On June 15, 2017, Plaintiff filed the Complaint in the Eastern District of New York.  *See*

ECF No. 1.  On November 18, 2017, Plaintiff filed the Amended Complaint.  *See* ECF No. 18.

In the Amended Complaint, Plaintiff cited 28 U.S.C. § 1331 and 28 U.S.C § 1367 as the basis for

jurisdiction.  *Id.* at 1.  Defendants' motion for summary judgment was fully brief on June 18,

2019.  ECF Nos. 45, 47, 50.  On December 11, 2019, the Court granted in part and denied in part

Defendants' motion for summary judgment.  ECF No. 52.  The Court writes now to provide the

reasoning for its decision.[3]

## LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law" by

citation to materials in the record.  Fed. R. Civ. P. 56(a)–(c).  A genuine dispute exists if a

reasonable jury could find in favor of the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986); *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir.

2001).  Courts must "construe the facts in the light most favorable to the non-moving party and

must resolve all ambiguities and draw all reasonable inferences against the movant" when

evaluating summary judgment motions.  *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011)

(citation and internal quotation marks omitted).  The role of the district court is not to weigh the

---

[3] The pre-trial conference in this case is scheduled for Thursday, March 11, 2021.

evidence and to determine the truth of the matter, but rather to answer "the threshold inquiry of determining whether there is the need for a trial." *Anderson*, 477 U.S. at 249–50.  An "extra measure of caution is merited" when deciding summary judgment for a discrimination action, "because direct evidence of discriminatory intent is rare, and intent must be inferred from circumstantial evidence." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 69 (2d Cir. 2001); *see also United States v. N.Y.C. Dep't of Educ.*, 407 F. Supp. 3d 365, 391 (S.D.N.Y Sept. 18, 2018) (Kaplan, J., adopting Report & Recommendation) ("Courts should be particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question, because direct evidence of an employer's discriminatory intent will rarely be found." (citation and internal quotation marks omitted)).

## DISCUSSION

For the reasons discussed below, the Court grants summary judgment to Defendants as to all claims against the City of New York, in addition to Plaintiff's § 1981, NYSHRL and NYCHRL claims.  The Court denies Defendants' motion as to Plaintiff's § 1983 and Title VII claims, including Plaintiff's claim of municipal liability.  Defendants' assertion of qualified immunity also fails at this stage.

### I.    Plaintiff's Claims Against the City of New York Are Dismissed.

The Court first dismisses the Plaintiff's claims, in their entirety, against the City of New York.  It is well settled the City of New York is an entity separate and apart from the DOE.  *See, e.g., Ximines v. George Wingate High Sch.*, 516 F.3d 156, 159–60 (2d Cir. 2008) ("[D]epartments of the City of New York typically, perhaps uniformly, have been created by the City Charter, which does not create a New York City Department of Education.").  *See Missick v. City of New York*, 707 F. Supp. 2d 336, 347 (E.D.N.Y. Mar. 22, 2010) (Mauskopf, J.) ("As

8

[plaintiff's] claims turn exclusively upon the conduct of DOE administrators and employees, the DOE—and not the City of New York—is the appropriate entity against which suit should be brought.") (citations omitted).  Accordingly, claims against the DOE and its officials cannot be imputed to the City of New York.  Because Plaintiff alleges no unique claims against the City of New York, the Court grants summary judgment in favor of Defendants with respect to all claims against the City of New York.

## II.      Plaintiff's 42 U.S.C. § 1981 Claims Are Dismissed.

The Court also dismisses Plaintiff's § 1981 claims.  When the defendant is a state actor, 42 U.S.C. § 1983 is the exclusive remedy for violations of rights guaranteed under 42 U.S.C. § 1981.  *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989) ("[T]he express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units . . . ."); *see also Gladwin v. Pozzi*, 403 F. App'x 603, 605 (2d Cir. 2010) (summary order) (noting plaintiff's § 1981 claims are "encompassed" by § 1983 claims); *Goodwine v. City of New York*, 15-CV-2868, 2016 WL 3017398, at *4 n.1 (S.D.N.Y. May 23, 2016) (Furman, J.); *Hill v. City of New York*, 136 F. Supp. 3d 304, 330 (E.D.N.Y. 2015) (Chen, J.) ("[W]hen the defendant sued for discrimination in violation of § 1981 is a municipality or an individual sued in his official capacity, § 1983 supplies the exclusive remedy for violations of rights guaranteed under § 1981" (citing *Jett*, 491 U.S. at 733–34)); *Walker v. City of New York*, 11-CV-2941, 2014 WL 1244778, at *8 n.6 (S.D.N.Y. Mar. 26, 2014) (Furman, J.); *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 576 (S.D.N.Y. Mar. 25, 2011) (McMahon, J.).  The Second Circuit recently re-emphasized this point, and explicitly held "§1981 does not provide a separate private right of action against state actors."  *Duplan v. City of New York*, 888 F.3d 612, 621 (2d Cir. 2018).

Here, Plaintiff brings §1981 and § 1983 claims against all Defendants.  *See* Compl. at 9–10.  Because Defendants are all state actors, § 1983 supplies the exclusive remedy.  Accordingly, the Court grants Defendants' motion for summary judgment on the § 1981 claims, in their entirety.

### III.   Plaintiff's SHRL and CHRL Claims Are Dismissed Due to Plaintiff's Failure to Meet the SHRL and CHRL Notice of Claim Requirements.

The Court also dismisses Plaintiff's SHRL and CHRL claims.  Section 3813(1) of the Education Law requires a notice of claim be filed to the proper governing body before any suit may be brought against the DOE or its officers.  *See* N.Y. Education Law § 3813(1). "Compliance with Section 3813(1) is a prerequisite for a suit naming a school district or its officers, and a plaintiff's failure to plead compliance with New York's notice of claim requirements mandates dismissal."  *Lewinter v. New York City Dep't of Educ*., 09-CV-0227, 2010 WL 2746334 at *2 (S.D.N.Y. July 9, 2010) (Gardephe, J.) (citing *PBS Bldg. Sys, Inc. v. City of New York*, 94-CV-3488, 1996 WL 583380 at *3 (S.D.N.Y. Oct. 8, 1996) (Koeltl, J.) ("The appropriate remedy for failure by the plaintiff to comply with a statutory notice of claim requirement is dismissal of the action, even if the claim is meritorious.")).  "Failure to satisfy [§ 3813's] requirements is 'fatal' to a claim filed against a school board under state or city law, regardless of whether the claim is brought in state or federal court."  *Thomas v. N.Y.C. Dep't of Educ.*, 938 F. Supp. 2d 334, 360 (E.D.N.Y. Mar. 29, 2013) (Townes, J.); *Johnson v. Cty. of Nassau*, 82 F. Supp. 3d 533, 538 (E.D.N.Y. Jan. 30, 2015) (Bianco, J.) (collecting cases).

Plaintiff failed to allege he filed a notice of claim, in any shape or form, in his Amended Complaint and did not respond to Defendants' contention on this point in his memorandum of law.  *See* Compl.; Pl.'s Mem.  Consequently, the Court grants summary judgment to the

Defendants as to the SHRL and CHRL claims in this action.  The Court now turns to the remaining claims.

IV.    **Plaintiff's 42 U.S.C § 1983 and Title VII Claims Survive Summary Judgment.**

      a.    <u>The Court Cannot Say Plaintiff's Remaning Claims are Time-Barred as a Matter of Law.</u>

Failure to file an administrative charge within 300 days bars a Title VII claim.  *Riddle v. Citigroup*, 449 Fed. App'x 66, 69 (2d Cir. 2011) (summary order).  Similarly, Defendants note claims brought pursuant to § 1983 are subject to a three-year statute of limitations.  *Rodriguez v. Westbury Pub. Schs.*, 13-CV-4976, 2015 WL 4459351 at *12 (E.D.N.Y. July 15, 2015) (Wexler, J.).  Plaintiff filed a charge of discrimination with the EEOC on January 19, 2017 and this action on June 15, 2017.  *See* Pl.'s Rsp. ¶¶ 109–11.  Defendants argue any discrete claims of discrimination that accrued prior to March 25, 2016—300 days earlier than Plaintiff's EEOC complaint—are time-barred under Title VII.  *See id.*  Defendants also contend Plaintiff's claims under §1983 are barred, to the extent they rely on facts from before June 16, 2014.  In both cases, Plaintiff argues the continuing violation doctrine salvages his claims.

Under the continuing violation doctrine, "if a Title VII plaintiff files an [EEOC] charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone."  *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (internal quotation marks omitted).  "To trigger such a delay, the plaintiff must allege both the existence of an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy."  *Fahs Constr. Grp., Inc. v. Gray*, 725 F.3d 289, 292 (2d Cir. 2013) (internal quotation marks omitted).  Likewise, when a plaintiff brings a § 1983 claim challenging

a discriminatory policy, "the commencement of the statute of limitations period may be delayed

until the last discriminatory act in furtherance of it." *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d

Cir. 1994) (quotation marks omitted); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S.

101, 116–17, (2002) (stating the same of hostile work environment claims under Title VII).

Here, Plaintiff alleges an ongoing policy of discrimination beginning in the 2011–2012

school year until the time of the briefing of this motion.  Pl.'s Mem. at 7–9.  For example,

Plaintiff alleges that in May, November, and December of 2016—dates that would satisfy the

statute of limitations for Title VII and §1983—Defendants targeted Plaintiff with falsely negative

evaluations despite his success with student testing, in furtherance of a policy of discrimination.

*Id*. at 12–13.  Considering the facts in the light most favorable to Plaintiff, emphasizing that

evidence in discrimination cases is almost always circumstantial at this stage, the Court finds a

reasonable juror could conclude these acts were taken in furtherance of a policy of

discrimination.  Therefore, the Court finds a genuine dispute of material fact as to whether

Plaintiff's claims are time-barred to the extent Defendant desires.

  b.  Plaintiff's Employment Discrimination Claims Survive Summary Judgment.

Courts analyze Title VII and § 1983 discrimination claims using the *McDonnell Douglas*

burden shifting analysis.  411 U.S. 792 (1973); *see also Ruiz v. County of Rockland*, 609 F.3d

486, 491–92 (2d Cir. 2010) (analyzing plaintiff's Title VII and § 1983 claims simultaneously and

under the same standard).  To establish a prima facie claim of discrimination under these

statutes, "a plaintiff must show that (1) he is a member of a protected class; (2) he was qualified

for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action

took place under circumstances giving rise to the inference of discrimination." *Id.* at 491–92.  If

the plaintiff establishes a prima facie case, the burden of production shifts to the defendant

employer to set forth a legitimate, nondiscriminatory reason for its action.  *See St. Mary's Honor*

*Ctr. v. Hicks*, 509 U.S. 502, 509–11 (1993).  Once the defendant provides its legitimate reasons, the plaintiff must demonstrate that the defendant's justification is a pretext for unlawful discrimination.  *Id.* at 510–11; *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000) ("[T]he employer will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination.").

### 1. *Plaintiff Establishes Adverse Employment Action*

Defendants argue Plaintiff's prima facie case fails on prongs three and four, sufferance of an adverse employment action and circumstances giving rise to an inference of discrimination. Regarding the third prong, Defendants argue negative evaluations and unfavorable treatment alone, which have never resulted in termination or a reduction in salary, cannot constitute adverse employment action.  Defs.' Mem. at 11–13.  Plaintiff responds that he has suffered not only negative evaluations, but also unrelenting harassment motivated by Defendants' racial animus.  Pl.'s Mem. at 7.

In the context of a discrimination claim, "[a] plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment."  *Malcolm v. Honeoye Falls Lima Cent. Sch. Dist.*, 483 F. App'x 660, 662 (2d Cir. 2012) (summary order) (citing *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)).  Material adversity requires an action be "more disruptive than a mere inconvenience or an alteration of job responsibilities."  *Id.*  Thus, "[e]veryday workplace grievances, disappointments, and setbacks do not constitute adverse employment actions."  *LaGrande v. DeCrescente Distrib. Co.*, 370 F. App'x 206, 211 (2d Cir. 2010) (summary order).  However, "[a]dverse employment action, which has been defined broadly in this circuit, may include 'demotion' and 'reprimand.'"  *Rolon v. Ward*, 5-CV-168, 2008 WL 4700705, at *19 (S.D.N.Y.

Oct. 24, 2008) (Conner, J.); *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (noting examples included "a less distinguished title," "significantly diminished material responsibilities" or "other indices unique to a particular situation").

Defendants primarily rely on support that negative evaluations, unfavorable assignments, disciplinary actions, and frequent observations, *without more*, do not constitute adverse employment action. *See, e.g.*, *Chung v. City Univ. of N.Y.*, 605 Fed. App'x 20, 22 (2d Cir. 2015) (summary order) (a negative performance review); *Dimitracopoulos v. City of New York,* 26 F. Supp. 3d 200, 213 (E.D.N.Y. June 4, 2014) (Weinstein, J.) (co-teaching assignment); *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 404 (S.D.N.Y.  Mar. 10, 2014) (Engelmayer, J.) (not grading exams); *Campbell v. N.Y.C. Transit Auth.*, 93 F. Supp. 3d 148, 168, 170 (E.D.N.Y. Mar. 26, 2015) (Brodie, C.J.) (disciplinary memoranda).  However, Defendants' cited cases are distinguishable from this one.

In each of Defendants' cited cases, the adverse employment actions are insufficient *only* when considered alone.  The court in *Chung* specified that where the plaintiff's "key allegation" consisted of one negative performance review "without more," there was no adverse employment action.  *Chung*, 605 Fed. App'x 20 at 22.  In fact, the court did not consider the plaintiff's substantially diminished responsibilities in conjunction with the negative review because they predated the negative evaluation, meaning the court may have found adverse employment had it considered both.  *See id*.  In *Dimitracopoulos*, a school teacher brought an age discrimination claim against the DOE citing negative evaluations as an adverse employment action.  *See Dimitracopoulos,* 26 F. Supp. 3d at 214.  Although  "[c]riticism of an employee in the course of evaluating and correcting her work is not, in itself, a materially adverse employment action . . . negative employment evaluation letters may . . . be considered adverse, if

14

they trigger other negative consequences in the terms and conditions of the plaintiff's

employment, qualifying as a materially adverse."  *Id*. (internal quotation and citation omitted).

The court found that if the plaintiff suffered negative evaluations that led to her inability to

secure per session employment, she could have suffered an adverse employment action.  *See id*.

at 213.  The *Henry* case is likewise distinguishable since, here, Plaintiff alleges his exclusion

from grading Regents Exams and assignment as a co-teacher are not simply "unfavorable

assignments," but "demotions" or "reprimands."  *See Henry*, 18 F. Supp. 3d at 406.  And in

*Campbell*, the court found no adverse employment action where there was no change in the

plaintiff's employment *at all*.  *See Campbell*, 93 F. Supp. 3d at 170 (finding no adverse

employment where disciplinary "charges for chronic absenteeism were held pending through

Plaintiff's retirement, were withdrawn upon her retirement, and never had any impact on

Plaintiff's employment").

Although Defendants point to individual cases to argue each of Plaintiff's allegations are

insufficient to show adverse material action *on their own*, Defendants point to no comparable

precedent that mandates summary judgment in their favor on this point.  Plaintiff's argument is

that his treatment at the hands of Defendants, considered *in totality*, constitute adverse material

action.  Furthermore, precedent does not require that Plaintiff lose his job or wages.  *See Henry*,

18 F. Supp. 3d at 406.  Plaintiff's allegations detail, among other things: (1) deprivation of

material responsibilities (grading Regents examinations, being assigned as a co-teacher); (2)

increased and constant reprimand amounting to harassment (unwarranted increase in

observations and negative evaluations, reprimand for not participating in professional growth

opportunities); and (3) humiliation in front of other teachers, students, parents (discipline notes

delivered by students, and in front of students).  *See* Pl.'s Mem. at 7; Pl.'s Rsp. ¶¶ 94, 100–01.

Considering the facts "unique to [this] particular situation," in the light most favorable to Plaintiff, the Court finds Plaintiff has sufficiently alleged adverse employment action.

### 2. *Plaintiff Establishes an Inference of Discrimination.*

Regarding the fourth prong, to prove a prima facie case, a plaintiff must only "sustain a *minimal* burden of showing facts suggesting an inference of discriminatory motivation." *See Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015) (emphasis in original) ("At this stage, a plaintiff seeking to defeat a defendant's motion for summary judgment would not need evidence sufficient to sustain her ultimate burden of showing discriminatory motivation, but could get by with the benefit of the presumption if she has shown evidence of the factors entitling her to the presumption."). A plaintiff may support their inference of discrimination in various ways such as "by showing that the employer subjected him to disparate treatment, that is, treated him less favorably than a similarly situated employee outside his protected group," *see Graham v. Long Island R.R.*, 230 F.3d 34, 38–39 (2d Cir. 2000*)*, or by showing evidence of a "pattern or practice" showing "that racial discrimination was the company's standard operating procedure, the regular rather than the unusual practice, and that the discrimination was directed at a class of victims," *see U.S. v. City of New York*, 717 F.3d 72, 83 (2d Cir. 2013) (internal quotations and citations omitted). Ultimately, "the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000). Direct evidence of discrimination is not necessary, particularly because "proof is seldom available with respect to an employer's mental processes." *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 135 (2d Cir. 2000).

Defendants argue Plaintiff's claims of discrimination are textbook "speculations, generalities, and gut feelings," and that Defendants Triola and Ojeda never made any

discriminatory comments to Plaintiff.  *See* Pl.'s Rsp. ¶¶ 65–66.  Beyond this, Defendants' denials of discrimination primarily focus on whether Plaintiff suffered an adverse employment action. In the few instances Defendants directly address the fourth prong, they maintain Plaintiff's claims are vague and Plaintiff failed to adequately introduce comparators.  However, the Court finds, resolving all factual disputes and reasonable inferences in favor of Plaintiff, that the Plaintiff has met his minimal burden of showing circumstances giving rise to an inference of discrimination at this point in the litigation.

The Court cannot say as a matter of law that the specific instances described by Plaintiff, considered in totality, are so vague as to warrant summary judgment for the Defendants.  Not only does Plaintiff allege an increase in negative evaluations such that he was placed for the first time in years on Teacher Improvement Plans for the 2015 and 2016 school years, he also points to a disparity in his evaluations and student performance.  *See* Pl.'s Rsp. ¶ 55.  Plaintiff shows a high passing percentage for his students on the Earth Science Regents Examination—ninety-four percent (94%) in 2014–2015, ninety-nine percent (99%) in 2015–2016, ninety-nine percent (99%) in 2016–2017, and one hundred percent (100%) in 2017–2018.  Plaintiff claims his high passage rates coincide with the exact period of time he was on teaching improvements plans. *See* Pl.'s Rsp. ¶ 32.  Defendants have failed to dispute these numbers.  In sum, Plaintiff's placement on a teacher improvement plan, despite the high scores of his students, is sufficient to raise an inference of discrimination at this stage of the litigation.

### 3.  *Defendants Fail to Articulate a Legitimate, Nondiscriminatory Reason for Their Actions.*

Plaintiff having established a prima facie case for discrimination, the burden shifts to Defendants to "articulate some legitimate, nondiscriminatory reason" for its action.  To meet this

burden, Defendants must "clearly set forth" the reasons for their actions against the Plaintiff.
*Texas Dep't of Cmty. Affairs*, 450 U.S. 248, 255; *Bucalo v. Shelter Island Union Free School
Dist.*, 691 F.3d 119, 132 (2d Cir. 2012).  If Defendants succeed in doing so, the burden shifts
back to Plaintiff.  To defeat Defendants' motion for summary judgment, Plaintiff "must establish
a genuine issue of material fact either through direct, statistical, or circumstantial evidence as to
whether the employer's reason for the [adverse action] is false *and* as to whether it is more likely
that a discriminatory reason motivated the employer to make the adverse decision."  *Vazquez v.
Southside United Hous. Dev. Fund Corp.*, 06-CV-5997, 2009 WL 2596490, at *8 (E.D.N.Y.
Aug. 21, 2009) (Garaufis, J.) (quoting *Gallo v. Prudential Residential Servs., Ltd*., 22 F.3d 1219,
1225 (2d Cir. 1994)).  Therefore, "[s]ummary judgment is appropriate at this point only if the
employer's nondiscriminatory reason is dispositive and forecloses any issue of material fact."
*Sciola v. Quattro Piu, Inc*, 361 F. Supp. 2d 61, 66 (E.D.N.Y 2005) (Platt, J.) (citing *Carlton v.
Mystic Transp., Inc.*, 202 F.3d 129, 135 (2d Cir. 2000).

Defendants argue the legitimate, nondiscriminatory reason for all alleged employment
actions is Plaintiff's poor teaching performance, clearly set forth in the negative performance
evaluations, disciplinary memoranda, and other documents submitted.  *See* Defs.' Mem. at 17–
20.  Defendants urge the Court to consider that "plaintiff's subjective disagreement with his
performance reviews is not a viable basis for a discrimination claim." *Sotomayor v. City of New
York*, 862 F. Supp. 2d 226, 259 (quoting *Valentine v. Standard & Poor's*, 50 F. Supp. 2d 262,
284 (S.D.N.Y. 1999)).  The Court finds Defendants' arguments unpersuasive and notes what
Defendants characterize as "plaintiff's subject disagreement" amounts to the exact type of
disputes of material fact that preclude summary judgment.

Summary judgment is not appropriate as to Plaintiff's racial discrimination claim against

Defendants.  Indeed, the Court is "decidedly not interested in the truth of the allegations against the plaintiff," but is "interested in what motivated the employer."  *McPherson v. N.Y.C Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006).  But the fact that the parties so vehemently disagree about the facts, and have so, for such a prolonged period of time, is relevant.  In his point by point rebuttals, Plaintiff has disputed the merits of his evaluations in great detail and offers this now as written evidence to support his claims.  *See, e.g.*, Pl.'s Rsp. ¶ 72.  As such, the Court acknowledges that this case boils down to an assessment of credibility of the parties, which is within the sole province of the jury.  *See Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.") (citation and internal quotation marks omitted).  At the heart of whether Defendants' stated reasons are pretext is whether Plaintiff's negative evaluations are true and accurate portrayals of his teaching.  And because Plaintiff has offered his own testimony, history of inconsistent evaluations and ratings, and student performance in opposition to Defendants' claims, there are many genuine disputes over the material facts, disputes that must be left for the jury.

At this stage of the proceedings, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."  *Brod*, 653 F.3d at 164 (internal quotation marks and citations omitted).  Drawing all inferences in favor of the non-moving party, Plaintiff has both met the minimal burden of establishing a prima facie case and produced evidence sufficient for a rational finder of fact to conclude Plaintiff suffered material adverse actions because of racial discrimination.  For the same reasons, the Court denies summary judgment to Defendants as to Plaintiff's retaliation and hostile work environment claims.

c.  Plaintiff's Retaliation Claims Survive Summary Judgment.

A prima facie case of retaliation requires a plaintiff to "demonstrate that '(1) []he engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action.'" *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (citation omitted).  Further, a plaintiff must show retaliatory animus was the but-for cause of the adverse action.  *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013).  But-for causation does not require proof retaliation was the sole cause of the employer's action, only that the adverse action would not have occurred in the absence of the retaliatory motive.  *Zann Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 846 (2d Cir. 2013).  The "standard for an adverse employment action in retaliation claims is considerably broader than the standard for discrimination claims under Title VII" since it simply considers "employer actions that are likely to deter victims of discrimination from complaining to the EEOC, the courts, and employers."  *Taylor v. N.Y.C. Dep't of Educ.*, 11-CV-3582, 2012 WL 5989874, at *9 (E.D.N.Y. Nov. 30, 2012) (Gleeson, J.) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006)).  Defendants exclusively take issue with prongs three and four. *See* Defs.' Mem at 21–23.  As such, the Court addresses only those arguments.

Regarding prong three, Defendants again argue Plaintiff's allegations are not adverse employment actions.  The Court has already found Plaintiff's allegations of adverse employment action sufficient to support the employment discrimination claims.  The standard for adverse employment actions in retaliation claims is less stringent.  *See Taylor*, 2012 WL 5989874 at *9. Thus, the Court incorporates and applies its earlier analysis to this point and moves to the causation requirement.

Regarding prong four, Defendants argue Plaintiff cannot establish causation because the

20

treatment he received prior to his filing with the EEOC was similar to the treatment he received afterwards.  *See, e.g.*, *Buckley v. New York*, 959 F. Supp. 2d 282, 298–99 (E.D.N.Y. 2013) (Spatt, J.) ("[C]ourts have held that if the alleged retaliatory behavior pre-existed the protected activity, the plaintiff must provide some evidence of ratcheting up or increased harassment to succeed.") (internal quotations omitted).  The Court finds Plaintiff has sufficiently alleged increased harassment occured *after* he filed his EEOC complaint**.**  He was subjected to an increased number of observations, from four (4) to seven (7) in 2017–2018, received increasingly worse evaluations, had positive oral evaluations not written down, and received conflicting feedback.  *See* Pl.'s Mem. at 17–18.  Based on Plaintiff's allegations, a reasonable juror could find sufficient evidence to determine there was retaliation by Defendants.  Therefore, the Court cannot say as a matter of law that Plaintiff did not suffer any retaliation from his EEOC complaint.

> d.  <u>Plaintiff's Hostile Work Environment Claims Survive Summary Judgment.</u>

To prove a hostile work environment claim under Title VII and § 1983, the Plaintiff must show that that the "complained-of conduct: (1) is objectively severe or pervasive; (2) creates an environment that the plaintiff [] subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [protected class]."  *Goins v. Bridgeport Hosp.*, 555 F. App'x 70, 71–72 (2d Cir. 2014) (summary order); *Sotomayor*, 862 F. Supp. 2d at 260 (§ 1983).  "To decide whether [that] threshold has been reached, courts examine the case-specific circumstances *in their totality* and evaluate the severity, frequency, and degree of the abuse."  *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (emphasis added).  Hostile work environment claims can be proven by showing "either that a single incident was extraordinarily severe, or that a series of incidents were 'sufficiently continuous and concerted' to have altered

the conditions of her working environment." *Id.* at 374 (citation omitted).

Again, Defendants argue Plaintiff's negative evaluations are not sufficient to prove a hostile work environment and reiterate their claim that there is no basis for inferring any discriminatory or retaliatory animus from any of the alleged actions. In light of Plaintiff's allegations of incessant poor and malicious evaluations, disciplinary notices, demotion and intentional acts to cause Plaintiff humiliation because of his race, the Court finds there is a genuine dispute as to material facts central to whether Plaintiff was subjected to a hostile work environment in violation of Title VII and § 1983.

## V. Plaintiff's Municipal Liability Claim Survives Summary Judgment.

Pursuant to 42 U.S.C. § 1983, a municipality may be held liable for "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2nd Cir. 1995) (citation and internal quotation marks omitted); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). A *Monell* claim survives summary judgment if a plaintiff can establish that "policies or customs that [were] sanctioned by the municipality led to the alleged constitutional violation." *See Missel v. County of Monroe*, 351 Fed. App'x 543, 545 (2d Cir. 2009) (summary) (citation and internal quotation marks omitted).

Defendants argue Plaintiff's claim of municipal liability, based on his own negative evaluations, establishes no underlying constitutional claim because there is no property right or interest in positive evaluations. *See Fitzgerald v. Feinberg*, 98-CIV-8885, 1999 WL 619584, at *5 (S.D.N.Y. Aug. 11, 1999) (Sweet, J.). Further, Defendants argue, even if there was a constitutional violation, Plaintiff offers no evidence of a municipal policy or custom that caused such a violation. The Court disagrees.

Here, Plaintiff has alleged a systemic policy to eliminate teachers of color in a majority-minority school—a violation of Plaintiff's Constitutional right to equal protection under the law. *See* Pl.'s Mem at 15.  To support this claim, Plaintiff has alleged facts including "statistical evidence" showing the steady decrease in employment of teachers of color at Thomas Edison. *See id*.  However, because Plaintiff prepared this document specifically for this motion, and Defendants have not had the chance to respond to it, the Court does not rely on the "statistical evidence" for any decision in this opinion.  Furthermore, the Court refrains from any comment on, or determination of, the admissibility of this evidence at this stage.

Even excluding Plaintiff's statistical showing, the Court is satisfied there is a genuine dispute of material fact regarding whether a policy of discrimination existed.  Plaintiff alleges he received increasingly negative evaluations, in direct contrast to his students' performances, that lead to his placement on a performance improvement plan.  *See* Pl.'s Rsp. ¶ 55.  In support of his allegation that this was part of a custom or practice, he also points to: (1) the removal and replacement of Mr. Mohabir from his teaching position; (2) claims from other teachers of color that say they have been treated discriminatorily; and (3) occasions where Plaintiff, specifically, has been given derogatory tasks.  *See* Pl.'s Rsp. ¶ 74; Pl.'s Mem. at 15–16.  As the Court must view these facts in the light most favorable to Plaintiff, and draw all reasonable inferences in his favor, the Court finds these allegations preclude summary judgment for the Defendants on this issue.

## VI.     Defendants' Qualified Immunity Claims are Denied at this Stage.

"Qualified immunity protects public officials from legal actions brought under 42 U.S.C. § 1983 if their behavior does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Harlow v. Fitzgerald*, 457 U.S. 800, 818

(1982).  "[T]he alleged right must have been clearly established by Second Circuit or Supreme Court precedent at the time of the allegedly illegal action." *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020) (citations and quotation marks omitted).  A right is "clearly established" if "it would be clear to a reasonable officer [in the position of the defendant] that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

Considering the facts in the light most favorable to Plaintiff, it is not appropriate to grant summary judgment to Defendants on this issue.  The constitutional right to equal treatment under the law is clearly established, and "it has been clear since the Reagan Administration" that employers may not discriminate against their employees on the basis of race.  *Vil. of Freeport v. Barrella*, 814 F.3d 594, 609 (2d Cir. 2016).  It would not be objectively reasonable for Defendants Triola and Ojeda to believe targeting teachers of color for discipline and negative evaluations, pursuant to a policy of discrimination, is lawful.  Plaintiff's alleged facts, already described in great detail above, provide sufficient evidence of a genuine dispute of material facts regarding Defendants' treatment of Plaintiff, such that the Court cannot grant them qualified immunity at this time.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment, ECF No. 45, is GRANTED as to Plaintiff's § 1981 claims, New York State and City of Human Rights Law claims, and all claims against the City of New York.  The Court DENIES summary judgment as to all other claims.

**SO ORDERED.**

24

s/ WFK

_____

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated:  March 5, 2021
         Brooklyn, New York